```
┌─────────────────────────────────────────────────────────┐
│           NOT FOR PUBLICATION WITHOUT THE               │
│          APPROVAL OF THE APPELLATE DIVISION             │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R. 1:36-3. │
└─────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0214-16T1

DAVID HOLLAND, SR.,

     Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT and CLEAN HARBORS
INDUSTRIAL SERVICES, INC.,

     Respondents.

_____

     Argued telephonically July 2, 2018 —
     Decided July 16, 2018

     Before Judges Yannotti and Haas.

     On appeal from the Board of Review, Department
     of Labor and Workforce Development, Docket No.
     016,725.

     Sarah Hymowitz argued the cause for appellant
     (Legal Services of New Jersey, attorneys;
     Sarah Hymowitz and Melville D. Miller, Jr.,
     on the brief).

     Andy Jong, Deputy Attorney General, argued the
     cause for respondent Board of Review (Gurbir
     S. Grewal, Attorney General, attorney; Melissa
     Dutton Schaffer, Assistant Attorney General,
     of counsel; Andy Jong, on the brief).

Respondent Clean Harbors Industrial Services Inc., has not filed a brief.

PER CURIAM

Appellant David Holland appeals from the July 29, 2016 final decision of the Board of Review (Board), which affirmed the March 8, 2016 decision of the Appeal Tribunal that appellant was disqualified from receiving unemployment compensation benefits on the ground that he left work voluntarily without good cause attributable to the work. After reviewing the record before us, and mindful of the prevailing legal standards, we reverse and remand to the Board for further proceedings.

Holland is a military veteran, who began suffering back problems after retiring from the service. His doctors have treated this condition by prescribing muscle relaxants and pain medication.

On March 11, 2013, Holland started working as a truck driver for Clean Harbors Industrial Services (Clean Harbors). During his job interview, Holland told his employer of his pre-existing back issues and that his condition was aggravated by heavy lifting and manual labor.

For the first three months of his employment, Holland drove a specially-equipped truck to and from industrial clean-up sites. Once at a site, he set up the truck's equipment, which included

pressure washers and vacuums, and turned this equipment on and off as needed by the other employees. This work was not physically taxing for Holland, and he was able to perform all his duties, including light lifting of no more than twenty pounds.

In June 2013, however, Clean Harbors changed Holland's primary job duties when he was assigned to help other employees dismantle an industrial plant in Newark. At this job site, Holland only operated a truck one or two days a week because the employer kept the vehicles parked at the site. Instead, he now assisted the other employees with their physical labor. Among other tasks, Holland operated a pneumatic-type air hammer used to clean industrial tanks. He had to hold this tool over his head, which caused his back pain to flare up. He also picked up trash, swept, moved equipment, and repeatedly moved a 55-gallon drum, which also caused his back problems to worsen.

Holland attempted to make a medical appointment at a Veterans Administration hospital, but the hospital was unable to have a back specialist see him until July 29, 2013. Holland continued to work, although his pain was increasing as he attempted to perform his new duties. Holland testified that as a result, he was constantly in pain and was unable to move without great difficulty.

A-0214-16T1

On July 19, 2013, Holland told his supervisor that he could no longer do the job and needed to address his back condition. Holland knew that Clean Harbors did not have any less strenuous work available, and the supervisor confirmed during their meeting that this was the case. The supervisor told Holland to contact him if his condition improved in the future because he was a valued employee and eligible for rehire.

On July 29, 2013, the specialist at the VA hospital examined Holland. The specialist told Holland to avoid work involving heavy lifting, and find a less strenuous job. Eventually, the doctors found that Holland had a pinched nerve and arthritis in four of his lower back discs. He later began a course of back injections to address these issues.

On December 8, 2013, Holland applied for unemployment benefits. This claim was denied by a Deputy Claims Examiner, the Appeal Tribunal,[1] and the Board. Holland appealed this determination. We later granted Holland's motion for a remand because the Deputy, the Appeal Tribunal, and the Board all failed

---

[1] The Appeal Tribunal hearing examiner conducted a hearing at which Holland and his former supervisor testified.

to consider Holland's documentary evidence in their respective decisions.[2]

On remand, the Appeal Tribunal conducted another hearing at which only Holland appeared.[3] Holland's attorney specifically asked the hearing examiner to consider several of the Board's regulations in addressing Holland's claim for benefits.

In pertinent part, the first of these regulations, N.J.A.C. 12:17-9.3 states:

> (b) An individual who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability. When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.
>
> . . . .
>
> (d) When an individual leaves work for health or medical reasons, medical certification shall be required to support a finding of good cause attributable to work.

---

[2] We did not retain jurisdiction.

[3] The same hearing examiner presided each time the Appeal Tribunal considered Holland's application.

Through his attorney, Holland asserted that as set forth in N.J.A.C. 12:17-9.3(b), he suffered from a physical disability that preceded his employment with Clean Harbors, but which was aggravated once his job duties changed. He also contended that Clean Harbors had no other suitable work available to him at the time he left his employment. While Holland did not give Clean Harbors a copy of a medical report or certification from a physician at the time he left work, Holland pointed out that N.J.A.C. 12:17-9.3(d) did not require such a submission and, instead, merely directed a claimant to submit this supporting documentation in connection with an application for benefits.

In the event that the Appeal Tribunal determined that N.J.A.C. 12:17-9.3(b) was not applicable, Holland also asked the hearing examiner to make a determination as to whether he refused new suitable work when Clean Harbors changed his job duties at the Newark site. Holland argued that under N.J.A.C. 12:17-11.1, if the new assignment constituted suitable work, he should only be disqualified from receiving benefits for four weeks for leaving his position. If the new duties were unsuitable, however, he asserted that no disqualification should apply.

In fleshing out this legal theory, Holland maintained he was eligible for benefits because Clean Harbors modified his work duties and, in effect, made him a new offer of work that was

unsuitable for him given his back problems. Holland argued that N.J.A.C. 12:17-11.5(a)(3) defines a new offer of work as one involving "substantially different duties, terms or conditions of employment from those he or she agreed to perform in his or her existing contract of hire." As noted above, Holland's duties at the Newark job site were much more physically demanding than those he performed when he was first hired as a truck driver. Holland alleged this work was "unsuitable" in view of "the degree of risk involved to [his] health, safety and . . . [his] physical fitness[.]" N.J.A.C. 12:17-11.2.

On January 20, 2016, the Appeal Tribunal again affirmed the Deputy's denial of Holland's application for unemployment benefits. The hearing examiner's written decision was virtually a mirror image of his original decision, even though we had remanded the matter after concluding that decision was deficient.

The examiner did not address any of the Board's regulations that Holland raised in support of his application. Instead, he found that Holland left work without good cause because he did not obtain any medical documentation supporting his claim until after he told his employer he could no longer perform the new physically-demanding tasks at the Newark site because they were aggravating his back condition. As noted above, however, N.J.A.C. 12:17-9.3(d) does not require an employee to give such documentation to

his employer. Contrary to the testimony provided at the two hearings, the examiner also stated that Clean Harbors did not require Holland to perform these new assignments.

Holland immediately asked the Appeal Tribunal to reopen the matter so that his arguments concerning the Board's regulations could be addressed.[4] On March 8, 2016, the hearing examiner responded by issuing a new decision which was again almost a carbon copy of the first two. The examiner did not mention, much less analyze, the specific arguments Holland raised, or cite any of the Board's regulations upon which they were based. Instead, the examiner found for the first time that Holland never discussed his medical problems with his supervisor, even though there was no factual basis in the record for that finding. The examiner concluded that because Holland had not had his medical appointment with the specialist at the VA hospital before he left his job, he "failed to show there was any medical necessity connected to his decision to resign."

Holland appealed this decision to the Board, and submitted another written brief addressing the regulations he felt the Board needed to evaluate as part of its review. Ignoring this request,

---

[4] Holland submitted a written brief in support of this request, which fully explained the legal arguments he was raising based on the Board's regulations.

the Board issued a one-page decision on July 29, 2016, affirming the Appeal Tribunal's determination without further comment. This appeal followed.

On appeal, Holland asserts that the Board erred by failing to address his argument that he was entitled to unemployment benefits based upon the regulations he cited in his submissions to the Appeal Tribunal and the Board. We agree.

We begin by recognizing that our review of an administrative agency decision is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "Unless . . . the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Ibid.

At the same time, however, an administrative agency has a clear obligation to demonstrate through its decisions "that the litigants have been heard and their arguments considered. Justice requires no less." Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001). Here, neither the Appeal Tribunal nor the Board addressed Holland's arguments based on the Board's own regulations that he had good cause to leave his position because his new work duties were aggravating his preexisting medical condition, and that his employer had offered him more physically-demanding assignments he had no obligation to accept.

Instead, the Board merely adopted the Appeal Tribunal's decision, which did not even cite these regulations or accurately relay the testimony presented at the two hearings conducted by the hearing examiner. In addition, the examiner did not summarize, much less evaluate, the medical documentation Holland submitted after he was able to be seen by the specialist at the VA hospital. When, as here, an agency "overlook[s] or underevaluat[es] . . . crucial evidence," a reviewing court may set aside the agency's decision. Trantino v. N.J. State Parole Bd., 166 N.J. 113, 192 (2001) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). That is clearly the appropriate course of action here.

Accordingly, we reverse the Board's decision denying Holland's application for unemployment benefits and remand for a new consideration of his application, the facts underlying it, and the legal arguments he has raised. The Board shall promptly determine whether the Appeal Tribunal should conduct a new hearing in the matter so that the Board may address the regulations and legal issues raised, or whether the existing record is sufficient for the Board to render a new decision on Holland's claim.

On remand, the Board shall also consider the Supreme Court's recent decision in Ardan v. Bd. of Review, 231 N.J. 589 (2018), which was obviously not available at the time of its July 29, 2016 decision. In Ardan, the Court held that an employee is not always

required to notify the employer of his or her medical condition before leaving a position as permitted by N.J.A.C. 12:17-9.3(b), and may not be required in every case to inquire as to whether the employer will accommodate the limitations imposed on the employee by that condition. Id. at 605.

In remanding this matter, we express no opinion on the merits of Holland's claim for benefits, and only direct the Board to reconsider the appeal and fully address the factual and legal issues that the parties have presented.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION